UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUMMIT RESOURCE GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CV1831 HEA |
| ) | |
| JLM CHEMICALS, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction, [Doc. No. 4] and Plaintiff's Motion to Strike Defendant's Proposed Findings of Fact and Conclusions of Law, [Doc. No. 14]. For the reasons set forth below, the Motion for Preliminary Injunction is granted. The Motion to Strike is denied.

## Factual and Procedural Background

This matter was removed from the Circuit Court for the County of St. Louis, Missouri on November 26, 2008.[1] Prior to its removal, the Circuit Court had issued a Temporary Restraining Order in this case against Defendant on November 24, 2008. This TRO was set to expire on December 4, 2008. As such, this Court held

---

[1] On the same date of removal, Defendant filed a Complaint in the United States District Court for the Southern District of New York against Plaintiff.

a hearing on Plaintiff's Motion for Preliminary Injunction. The Court heard testimony from Plaintiff's president, Craig Cataldi. Defendant submitted affidavits; defendant did not call any witnesses to testify.

Plaintiff's Verified Petition alleges that it has utilized Defendant in the past as a supplier of certain chemical goods used in its business. In connection with the same, Plaintiff caused the issuance of an Irrevocable Standby Letter of Credit Number SB 55322, dated January 23, 2008. This letter of credit was to expire on July 23, 2008. Plaintiff caused the issuance of an Amendment to the Irrevocable Standby Letter of Credit. The Amendment extended the expiration date of the letter of credit to January 23, 2009. All other terms of the letter of credit remained the same. This letter of credit with the amendment was given to Defendant to allow it to demand up to the amount of $600,000, upon the presentation of the original Letter of Credit and any subsequent amendments and Defendant's statement on its letterhead, completed, dated and signed by an authorized individual, stating that Plaintiff has failed to pay invoices within the agreed payment terms between Plaintiff and Defendant, requesting wiring of invoice proceeds to Defendant.

At issue are two chemical sales transactions for the purchase of glycine, accompanied by the issuance of invoices by Plaintiff. These invoices are known as Summit Purchase Order No. 071508-879 in the amount of $103,616.20, and Summit

Purchase Order No. 071508-880 in the amount of $134,039.68.

The Petition further alleges that in response to Plaintiff's request to cancel both invoices, Defendant confirmed in writing on November 3, 2008 that both such invoices had in fact been effectively cancelled by Defendant as of November 3, 2008. Defendant, however, is now threatening to draw down on the Letter of Credit line of Plaintiff. Plaintiff requested that the product not be shipped; Defendant insisted that it will ship the product.

Plaintiff presented the testimony of Craig Cataldi, Plaintiff's President. He testified that Plaintiff purchases product from Defendant. Defendant has relationships with manufacturers of the products that Plaintiff requires that are located overseas. Plaintiff utilizes Defendant as a source and works with its relationships with overseas suppliers. He also testified that he contacted Defendant to cancel three purchase orders, however, one order had already been shipped from the overseas supplier, (had "hit the water"), and therefore could not be cancelled. Plaintiff paid for this shipment and is storing the product. The other two orders had not been shipped, and Plaintiff was advised by Donna Crane, its contact with Defendant, that the other two orders were cancelled. Subsequent to this notification, Defendant received another email stating that the orders were not being cancelled and that Defendant was being pressured to ship the other two containers

of glycine.

Plaintiff seeks a preliminary injunction to prevent Defendant from presenting the Letter of Credit for payment of the unshipped glycine.

## Standard of Review

When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. *Pottgen v. Missouri State High Sch. Activities Assoc.*, 40 F.3d 926, 928 (8th Cir. 1994), citing *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *Straights v. Osso*, 471 F.3d 908, 911 (8th Cir. 2006).

## Findings of Fact and Conclusions of Law

Based on the *Dataphase* factors, the Court finds and concludes as follows:

a. **Plaintiffs have shown a probability of success on the merits of whether Plaintiff can cancel its invoice orders**. The evidence presented at the hearing establishes that Plaintiff requested from its contact at Defendant a cancellation of the invoices. Its contact, Donna Crane sent an email to Plaintiff indicating that the two purchase orders were cancelled. Prior to this event,

Defendant has cancelled invoices for various reasons. The parties had an ongoing relationship and Plaintiff had previously cancelled orders without penalty. The notion that orders could be cancelled prior to the shipment leaving the supplier is demonstrated by Plaintiff's attempt to cancel an order, but later having to accept and pay for the order since it had hit the water. Since the later two shipments had not been shipped, Plaintiff is entitled to rely on the industry practice that no payment would be required. Plaintiff fulfilled its obligations with respect to the shipment that had hit the water with the appropriate payment thereof, even though it no longer needed this particular shipment. Cataldi testified that this cancellation policy of the parties was consistent with the standard of businesses in the chemical supply and sales industry.

b. **Plaintiffs have shown the threat of irreparable harm absent the injunction**. The irreparable harm factor focuses on the harm or potential harm to the plaintiff of defendants' conduct or threatened conduct. *Dataphase,* 640 F.2d at 114. A plaintiff seeking preliminary injunction must establish that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Natural Res. Def. Council, Inc.,* 129 S.Ct. 365, 374 (2008). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir.2003); *see also Beacon Theatres,*

*Inc. v. Westover,* 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.").

Cataldi testified that in the event that Defendant presents the letter of credit for payment of the goods which have not been shipped, and therefore he has not received, would have a devastating effect on Plaintiff's business such that the Plaintiff may not survive. He further testified that the business would be unable to secure sufficient lines of credit to continue as a going concern, leaving it out of business prior to any trial on the merits of this case or the case filed against Plaintiff by Defendant in New York. While the Court is mindful that a mere loss of monetary income is insufficient to justify a finding of irreparable harm, complete devastation of an ongoing concern is indeed irreparable. Once a going concern is no longer, monetary damages are an inadequate remedy. "As required to support such relief, [] respondents alleged (and petitioner did not deny) that absent preliminary relief they would suffer a substantial loss of business and perhaps even bankruptcy. Certainly the latter type of injury sufficiently meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless." *Doran v. Salem Inn, Inc.* 422 U.S. 922, 932, (1975).

    c. **Balancing the harm to Plaintiffs**. The harm to Plaintiff versus the injury

that would be inflicted on Defendant if the injunction issues favors Plaintiff. While Plaintiff has presented evidence that failure to issue the injunction may result in a failure of its business, Defendant's evidence clearly establishes solely monetary losses if it is successful in this action and/or the action in New York. Moreover, as Plaintiff argues, the potential of any monetary loss is somewhat lessened by the $10,000 bond posted by Plaintiff.

    d. **The public interest, separate and apart from the interest of any particular group**. As previously noted, the practice of cancelling orders in the chemical sales industry is consistent with allowing cancellation prior to shipment. Purchasers and suppliers should be entitled to rely on established practices. Allowing Defendant to "change the game rules" in the middle hinders the flow of commerce and manipulates the industry custom such that it benefits only Defendant. Specifically, parties would be hesitant to issue letters of credit for fear that those letters of credit will be presented for payment for goods not received, or suffer exorbitant "cancellation penalties" for cancelling an order, when previously orders could be cancelled without penalties if the shipment had not yet "hit the water." The public interest is best served by maintaining the established system of the timing of cancellation. Indeed, this is exemplified by Plaintiffs' recognition of this established system by accepting the fact that it must pay for one order since it had been shipped.

Accordingly, on the basis of the foregoing,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction directed against Defendant is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant, its officers, agents, servants, employees, attorneys, and any other person or entity associated with Defendant and in active concert or participation with Defendant , its officers, agents, servants, employees, or attorneys, are hereby enjoined and are required to:

(1) immediately cease and desist from shipping to Plaintiff any of the product from the two cancelled invoices between Plaintiff and Defendant, known as Summit Purchase Order No. 071508-879 in the amount of $103,616.20, and Summit Purchase Order No. 071508-880 in the amount of $134,039.68, each for 44.092 pounds of glycine;

(2) return into Plaintiff's possession within 48 hours of this Order the original letter of credit original Letter of Credit Number SB 55322 dated January 23, 2008, and its original Amendment dated July 22, 2008; and

(3) immediately cease and desist from attempting to present either purchase order to M&I Marshall & Illsley Bank, Attn: Global Trade Services, 770 N. Water Street, 10th Floor, Milwaukee, WI 53202, for purposes of attempting to draw upon

the letter of credit of Plaintiff.

The terms of this Order shall remain in full force and effect throughout the duration of this action in this Court.

This Court shall have the power to enforce the terms of this Order by contempt order and/or sanctions as necessary, in the Court's discretion.

Grant of this Preliminary Injunction is conditioned upon Plaintiff posting bond with this Court in the amount of $15,000.

Dated this 29th day of December, 2008.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE